and Hear Oral Argument in the third one. Ponton, I'm sorry. Good morning. May it please the Court, Assistant Federal Public Defender Janice Ponton filed a Section 1983 civil rights complaint in the District Court. When the District Court re-characterized that complaint later on as a Section 1983 habeas corpus petition, it failed to comply with the mandates of Castro v. United States. It did not do the three things required by Castro in that it did not notify Mr. Ponton of the re-characterization. It did not warn Mr. Ponton that any subsequent 2254 would be treated as a second or successive petition. It did not provide Mr. Ponton with the opportunity to withdraw or amend his pleading so that he might include all claims in that petition. And because the District Court failed to do these three things that are required by Castro, that mandates that that filing cannot be considered Mr. Ponton's first habeas corpus petition such that any subsequent petition cannot be treated as a second or successive petition. And that's true in this case. In 2016, Mr. Ponton filed a Section 2254 petition. The District Court dismissed it as second or successive, relying on this prior 1988 petition. And Mr. Ponton submits that that was an error under Castro and asks that the Court vacate the District Court's order dismissing the 2254 petition as second or successive. And then also vacate the prior District Court's orders dismissing Mr. Ponton's prior 2254 petitions that were subsequent to this 1988 case as second or successive. And then also afford Mr. Ponton to file a new 2254 petition as a first petition. That's the remedy that this Court provided in the unpublished decision in Camejo Rodriguez. And Mr. Ponton asks that the Court provide the same remedy here. Yeah, it's a heck of a note, although no less legally required, if it's legally required, given all his previous filings. Yes, there are a number of them, Your Honor. Wow. There are almost as many in Camejo Rodriguez, Your Honor. I also represented Mr. Camejo Rodriguez, and I think there were ten or twelve in that case as well. I thought there were thirty-five in the state courts, and then, well, there were ten or twelve in this case. In the federal court, yes, Your Honor. I understand. That really legally is irrelevant to your argument. I'm just observing it in passing because I don't have many other questions for you. Do we have to examine the question of retroactivity here? Well, no, Your Honor. I think— Tell me why not. Well, Your Honor, because what we're not—what Mr. Ponton is— You might be right anyway, even if we do, but I'm trying to get the proper procedural vehicle to get to the end of the road here. What the Court said in its unpublished disposition in Camejo Rodriguez is that the Court need not decide whether Castro applies retroactively because the Court is not invalidating the previous recharacterization in the 1988 case. The Court is simply considering the effect of that recharacterization in the 2016 proceeding. What Mr. Ponton is asking the Court to do is to consider the effect of Castro, which was the Supreme Court decided in 2003, the effect of that decision in the 2016 case. What Castro says is that in the 2016 case, you look to see how the Court—whether the Court complied with Castro in 1988. It is a little mind-bending in ways, but that's what Castro considered, and that's what Camejo Rodriguez said was not— Let me tell you why I asked the question. In the first place, Castro itself appears to me to have conceived of what it was doing as a retroactive modification of the preclusive effect rather than what we suggested in Camejo. Am I wrong about that? I'm sorry, Your Honor. I'm not sure I understand the question. The Court in Castro looks to me like it thought what it was doing was making a retroactive modification, applying principles of retroactivity, as opposed to doing what you suggest we ought to do and what you properly point out we did do in an unpublished opinion. I understand your question, Your Honor. I'm not sure that the Court needs to reach the retroactivity question, however, and I think that in other situations— If we do, it's a very hard question. It is a very hard question, Your Honor, and I think the Court may have answered that in other statute of limitations cases that are not before the Court in the briefing here, where it is considered the retroactivity of Castro problematic and probably would not support, say, a new statute of limitations—would not trigger a new one-year period for statute of limitations purposes. I mean, I think that's based on other aspects of Castro that may not be relevant here, but I think the retroactivity of Castro was a very complicated question that the Court need not consider. There are other circuits as well that agree with McCamejo-Hodriguez that say that what you're considering is not . . . you're not applying Castro retroactively to the 1988 case. You're considering the effect of Castro in the 2016 case and what that means with respect to what the Court did in the 1988 habeas case. Now, let me ask you one thing that does touch on what I call the merits of your argument. As I understand it, the initial filing in 1988 was recharacterized as a mixed petition. Yes, Your Honor. And then your client, the petitioner, elected to dismiss the non-exhausted claims and proceed with the exhausted claim. That's correct, Your Honor. All right. Why isn't that different from Castro? Well, it's different in a couple ways, Your Honor. First is, my client disagrees that he had adequate notice of the recharacterization of the complaint from a civil rights claim to a habeas petition in the first place. There really was no district court order saying, I'm recharacterizing you. And it didn't . . . so even if he had adequate notice, I mean, Castro requires other things. The district court never warned him that that meant that any subsequent petition would be treated as a second or successive petition. And it also . . . it provided him with an opportunity to withdraw or amend his motion, but didn't tell him that that would preclude him from ever raising those claims again. And I think he dismissed some . . . The warning . . . The warning was inadequate because it didn't tell him that he would never have an opportunity to raise those claims again.  He dismissed . . . Let me ask you this. What effect or what analogy can be drawn from the Johnson line of ACCA cases in terms of retroactivity? I mean, what you're talking about there is, can past decisions be considered in present in ongoing sentencing in, let's say, cases that are now before the court? I mean, suppose somebody had a non-Johnson compliant or non-Johnson violent crime conviction and they now came into court and were sentenced for a post-Johnson crime in the district court, Southern District of Alabama. You couldn't use the previous non-violent crime, non-categorically, non-modified categorical approach violent crime, non-compliant, let's say pure residual clause. You couldn't use that. Is that giving Johnson a retroactive application or is it just simply saying that's the present treatment compliant with Johnson? We don't have to consider retroactivity, although the Supreme Court made Johnson retroactive to cases on direct appeal. I'm speaking off the cuff here and I don't want to bind my office in any future litigation around Johnson since it's not before the court. My thoughts on that would be that it would be the court applying Johnson to a sentencing proceeding in 2018 and the court would have to look anew at all of the prior convictions and consider whether or not they comply with the law at the time. That just kind of seems to me like an argument you didn't make but could have made in this case. Not to criticize. I'm just wondering if there's some weakness to that argument I've overlooked. No, Your Honor. I think that's what I said, maybe not as articulately as Your Honor did, but that what the court looks at is the state of the law at present and the state of the law at present says that in 1988, the district court failed to comply with Castro and so therefore, it doesn't preclude the filing of a later petition at this time. The state hadn't responded, hadn't been given an opportunity to respond. You look at the Supreme Court's decision on courts raising the statute of limitations on their own, not encouraged. What would happen if we agree with you is we vacate and remand, send it back and say order a response from the state and proceed accordingly. I agree, Your Honor. I think the statute of limitations question in this case could be very complicated given all of the many filings in and out of the state and federal courts. In terms of constructing a timeline, it will keep me quite busy for the next few years. If we were to say that Castro should be applied retroactively, we would in a habeas setting, would we not be upsetting a final adjudication? We're upsetting a final adjudication here if we do that, aren't we? I'm sorry, Your Honor. The final adjudication in the district court? Yeah. Under the underlying case here. I'm just concerned depending on how we characterize it. Judicial decisions are generally and have always been understood to be retroactive in nature. But we haven't applied that principle across the board like in habeas circumstances. We look at things slightly differently and we back off what had been a common law rule in Holmes' words for a thousand years. It had always been understood that a judicial opinion differs fundamentally from legislative enactment and it applies retroactively. But we've said we're not going to quite do that in habeas where one of the concerns we have is the powerful values in finality and certainty. To what extent does that play into this issue? Well, Your Honor, I- It's going to be a little bit different, but I'm asking you to help me with that principle. I think you're right, Your Honor. I mean, habeas has always recognized principles of federalism and comedy that other civil cases before the court do not and the interplay between the state and federal- And has backed off the fundamental principle that judicial decision making is necessarily retroactive in nature as opposed to the prospectivity that applies to, say, a legislative pronouncement. But in habeas, we've looked at it differently and we've reached out for the values in finality and certainty and comedy and federalism, et cetera. To what extent is that a problem here if we apply Castro in a retroactive way? Well, I think, Your Honor, those concerns were primarily addressed, you know, with the enactment of the ADPA in 1996. And it's more stringent application of the rules limiting the types of situations in which you can bring a second or successive application. Rule 9B of the habeas rules existed before then, but it was much easier- It wasn't easy, but it was easier to file a second or successive application and get the court to hear that than it is now post-AEDPA. But Castro was decided after the AEDPA and it was decided to ameliorate the effects of the AEDPA, which basically provides you only one shot at federal habeas corpus relief. And to ameliorate those effects for folks who were, you know, not provided these warnings that Castro feels were required to allow them their one full shot in federal habeas with all of the claims they might bring. I mean, any petitioner post-1996 was well aware that they had their one shot in federal court, had to bring all of their claims in one petition, or they would basically be out of luck unless they could prove their innocence or, you know, the other situation that came up in Johnson. But for those folks like Mr. Castro who were litigating before the AEDPA, they had no way of knowing that, as happened to Mr. Ponton here, that if he agreed to go forward on only one claim and dismiss some 20, 30 others, that he would never have an opportunity to proceed again on those claims. And Castro, the Supreme Court adopted Castro to ameliorate the effects of the AEDPA well recognizing, you know, the history of habeas and the implications for state and federal relations, but also recognizing the power of habeas and the need to remedy constitutional violations and allow the courts the ability to do that. So I think the Supreme Court weighed those considerations. And applied it in that case. And applied it, yes, Your Honor, and applied it in that case. Thank you. Thank you. Good morning. May it please the Court, Marlon Weiss on behalf of the Florida Department of Corrections. This appeal boils down to whether the 88 Spellman petition was recharacterized as a first petition. Because the ordinary understanding of the term first means, in our view, first in time rather than first on the merits. As counsel posits, in our view, that ends this case. And there's three reasons for that that I would like to discuss this morning. Number one. I mean, even if the first in time petition was dismissed for procedural and non-merits reasons, that counts for a lighter quote, second and successive end of quote? No, but that's not the question. The question, we're not, we never did contend, and we don't contend here, that petitions 1, 2, 3, and 4 are the predicate for the successiveness determination. What we're contending is that 88 Spellman was the recharacterized petition that ultimately resulted in a merits determination, that that was the predicate for the successiveness bar. The relevance of the first, whether it's first, it doesn't pertain to whether it's first for successiveness purposes, and that's the critical point. It pertains to whether it's first for receiving Castro warnings. Those are two distinct questions. Given that in this case, and I know it's tough to understand because we have such a convoluted procedural history. I mean, he reconstrued the 88 filing, did he not, as a mixed habeas petition, even though it wasn't characterized as a habeas petition? Correct. I'm sorry, even though the petitioner didn't characterize it. It was recharacterized, but prior to that, you have the 84 Hastings, which was correctly denominated as a 2254 petition, and then you have 80- And dismissed on procedural grounds, right? Correct. Okay, so that doesn't count for second successiveness. I'm not saying it does. I'm saying it counts for the purpose of whether the petitioner was entitled to get Castro warnings. So once you file a petition that's dismissed on procedural grounds, you don't get Castro warnings in a second petition that you file later? I'm sorry, a complaint you file later and it gets recharacterized, you don't get Castro warnings? Well, there's two reasons that in our view, that's a correct statement. Do you have any precedent for that? No, this is an issue of first impression, Judge. That's because nobody's ever had the audacity to argue that before. I mean, come on, that's not what Castro says. Castro says that before you can recharacterize a petition as a first petition, as a first 2254 petition, that's when you're entitled to get those warnings. In that context, they're talking about first for purposes of ruling out a later first one and therefore of kicking in the second and successive limitations. I think that the purpose of Castro will shed some light on this discussion because the purpose of Castro is to protect innocent filers. And when you have a first filed 2254, irrespective of whether it was resolved on the merits or not, that petitioner is actually or constructively aware of all of his entire universe of claims, as he must be, and he knows further that he must bring them all at the same time. And he knows further that he must bring them all at the same time, based on what does he know then? 2244B. He knows the law. If you're filing a petition for a writ of habeas corpus under 2254, you should... But what if you're not? What if you're filing a complaint under Section 1983, a letter for the appointment of counsel, which gets recharacterized as 2254? You're supposed to know the second and successive application restrictions under ADEPA? If you are, then the Supreme Court is wrong with Castro. The answer to Castro is, they know all that. No, just, you know, if you'll indulge me for a couple seconds, I'd like to answer that question. What we're talking about is when somebody files a first filed, first in time filed 2254, they are aware of their entire universe of claims. And therefore, this is what I was going to say, that means any subsequent mislabeled petition takes this individual out of the category of an innocent filer, because he's aware of his claims, he knows he should be bringing them at the same time, and therefore... Then why give the Castro warnings? Why? Supreme Court just overlooked the fact that he knows he should be bringing them all at the same time? No, the Supreme Court didn't overlook that. That's the plain language of Castro, says a first, something that's recharacterized as a first 2254 petition, and it contemplated the scenario of an unwary petitioner, an accidental filer who doesn't know the rules. He didn't accidentally draft his pro se petition and accidentally mailed it. He purposely did so. Under a mislabeled, under a mislabeled rule. Is this kind of a one bite limitation to Castro? You get one warning, and it's implicit. It just seems to me you're at war with, your argument's at war with Castro. And maybe I can attempt to persuade your honor, because, and I'm going to come back to this, because Castro, implicit in Castro, is this understanding that you are trying to protect an innocent filer that made a mistake, and therefore is shut out of legitimate legal rights because he's unaware that he is initiating his first full round of collateral review. But when someone files a first file, in this case a second filed, first and second filed 2254 petition, they know their claims, they know they need to bring them all at the same time, and therefore- Why do they know that? Why do they know they need to bring them all at the same time? How? Because they filed a 2254 petition. And they are, just as Castro warnings, if you do file a 2254 petition- And it was dismissed on procedural grounds. But imagine that it was resolved on the merits. Then we don't say that you would need Castro warnings for the second petition, so obviously there's a presumption. The Supreme Court says in Castro that the very point of the warning is to help the pro se litigant understand not only one, whether he should withdraw or amend his motion, but also two, whether he should contest the re-characterization. In this case, if I have it right, Pontan essentially argues that the district court that adjudicated his first habeas petition should have told him that his motion was being re-characterized and that if he had been so notified, he would have objected or otherwise responded. But without getting that warning, he had no knowledge and didn't respond. Why isn't the theoretical foundation and rationale of Castro squarely at issue with respect to this petitioner? What am I missing? Because I think that implicit in your question is an overly broad reading of Castro- No, I quoted Castro. Castro says, and I quote, the very point of the warning, I'm not interpreting, I'm quoting from a Supreme Court opinion, the very point of the warning is to help the pro se litigant understand one, not only whether he should withdraw or amend the motion, but two, whether he should contest the re-characterization by the district court. Pontan says here that the district court that adjudicated his first habeas petition should have warned him, should have told him, one, that it was being re-characterized, two, warned him about the consequence, and if he had been so notified, he says he would have responded or objected to it. Isn't the very warning that they were concerned about in Castro at play in this case? And if it isn't, tell me why not. Okay, I think what's being overlooked is that Mr. Pontan is not your garden variety pro se prisoner who mistakenly mislabels a petition. When somebody files a first in time 2254 petition, as I keep saying- But did he have the opportunity to object to the re-characterization? No, but I'm stuck on whether he was entitled to those warnings, not whether he had the opportunity to object to the re-characterization. Because when somebody who had already filed a 2254 petition proceeds and files a subsequent mislabeled petition, there's only a couple consequences to that. Either, number one, he's deliberately proceeding on certain claims and abandoning the other ones, in which case he would have received his full round of collateral review. It doesn't implicate fairness interests of Castro. Or the second possibility is that he's withheld some claims in his back pocket for a rainy day to attempt to assert- The third possibility is he doesn't know he has to bring them all together and he hasn't thought of some of them yet and if you slapped him with warnings, he would sit down and think about them. And that's why- That's the whole premise of Castro. And that's why our contention is when somebody has a first in time file, 2254, that makes it different. Let me ask you about your retro, you also argue in your brief retroactivity, there's not retroactive decision, doesn't Castro itself refute that? Well Castro just applies it to that case under consideration, it doesn't make a sweeping statement that it's to be- The Supreme Court has held since Griffin v. Kentucky and everything else that the same rule applies to like-situated defendants or defendants in that case, appellants, petitioners. In other words, you had a previous . . . it was 2255, so you had direct appeal affirmance. Then you had the previous filing of 2255 and then he came in and filed a second one. This court re-characterized . . . well, this court affirmed the district court re-characterizing the first one and said the second one is therefore second and successive. The Supreme Court said no, we're going to look back at that first one that was re-characterized and there were no warnings, so you cannot use it to make this one second or successive. So it applied the rule retroactively to Castro's first 2255. So that's, quote, if that's retroactive, that's, quote, retroactively sanctioned by the Supreme Court. Well, here's my response to that and I think that is also sort of part of the cameo argument where you have a decision and you have a 2016 dismissal and so there's no problem because it's current law and it's a current dismissal, but here's what's being overlooked. There's 25 years of procedural history here. In 1992, that is the first time that that 88 Spellman petition was deemed to be the predicate for a successiveness bar and Cameo Rodriguez talks about the effect and that's exactly what we're talking about here because when you have . . . to a previous long final adjudication in a 2255 after it had been re-characterized and they said you can't count that on the current one. But the 1994 petition in Castro, it was not deemed to be successive. Here . . . I'm sorry, why then were we arguing about the previous filing? I'm not sure I understand your honor. I'm not sure I understand your position. I thought that what we had, it was a 1994 motion that wasn't labeled 2255 and the district court in that 1994 filing re-characterized it as a 2255 proceeding. Correct. Then later, he filed the one that was under review in Castro, the Supreme Court. Correct. What the Supreme Court said is you can't count the early 1994 one because you didn't give him warnings. Here's the difference. In this case, you have a successiveness bar that is being employed since 1992. Three times in 1992 and throughout the years for the last 25 years. So that effect . . . Erroneously under Castro. Well, that's the thing that that effect of the 88 Spellman petition is what we're considering here. The effect of that was to give it a successiveness bar. And so on appeal, what we have is essentially a collateral attack on a successiveness determination that's 25 years old. Just like in Castro, you had an attack on the successive determination that was pending before the court at that time. We're not talking about what was done 20 years before. We're talking about whether this one can be, in this case, whether this one now before the court can be considered successive. We don't read Castro as setting forth a general retroactivity principle. It just limited the retroactive application to that case. Nevertheless, it applied the principle retroactively to that case, did it not? Correct. That's the point that I think is being made. It may have limited it there, but it did that very thing in that very case, right? Right. Okay. Got your argument. Ms. Bergman. Thank you. Ms. Bergman, I assume you're going to tell me I'm being unfair to the counsel for the state and I've got it all wrong. No, Your Honor. I just really want to make one quick point and then not take up any more time of the court's time. The rule that the state appears to be urging with respect to the pleadings that were filed prior to the 88 case is the harmless error rule that they argued in their brief. And I would just point the court to its prior published decision in Figueroa-Sanchez, which I cite in the reply brief, which basically states that Castro was mandatory and categorical. And so the only question the court looks at is whether the 1988 pleading was recharacterized in a way and then recharacterized as a habeas petition and then whether or not the court gave the Castro warnings. And if it did not, then it cannot stand as a first. If he had been given the warnings, what would he have done differently? Excuse me, Your Honor? If he had been given Castro warnings, what, if anything, would he have done differently? Well, I think, Your Honor, he wouldn't have agreed to dismiss the, I think there were some 30-something other claims and go forward on only the one exhausted claim. He would have gone back to exhaust. I mean, this was so long ago, Your Honor, that dismissal of a mixed petition. Right. So he wouldn't have abandoned those other issues. I think that's correct, Your Honor. You're arguing basically that this is a bright line mandatory rule like Miranda, even if you, if purely hypothetical, Alan Dershowitz and Larry Tribe were arrested for something and they failed to give them the Miranda warning, they're still entitled to exclude the statement. We don't look at this particular petitioner's knowledge or lack thereof based on experience or reading the law or being told in a prior proceeding. That's correct, Your Honor. As long as they're proceeding per se, the court . . . But isn't there some significance to attach to the fact that unlike Miranda, which is rooted in a very different foundation, this rule fashioned by the Supreme Court in Castro is grounded in its supervisory power? I think, Your Honor, that Miranda was also part of the court enacted . . . Well, but there's more to it than . . . control that the Supreme Court might otherwise have . . . I have to say . . . . . . over rules of procedure. Excuse me, Your Honor. I have to say that Fourth Amendment claims aren't usually governed in habeas cases, so my knowledge of the Fourth Amendment isn't as broad as it should be. But you understand the point that I'm raising with you? Yes, I do, Your Honor. This is grounded in the supervisory power of the Supreme Court. It's not grounded in the Fourth Amendment. It's not grounded in the Fifth Amendment. It's not grounded in MAP. It's not grounded in the exclusionary rule. It's a very different species. What significance are we to draw from that, if any? I'm not exactly sure, Your Honor. I mean, I think that with respect to the question about whether this was actually his first motion and whether those prior procedural dismissals . . . I would note that the three prior cases prior to the 1988 case, they were all dismissed without prejudice. And I think even if we weren't in habeas land, that no court would consider those to have any kind of preclusive effect because, as I said, they were all expressly dismissed without prejudice. But notwithstanding that, I think that the fact that first and second motions or petitions in habeas land have always meant something very specific. The court has always been very clear that just because something was filed previously, that doesn't mean it's a first motion or petition. And because something was filed subsequently, that also doesn't count. There's a series of Supreme Court decisions that define when a case is a first petition or a second petition. And I think there's no reason to assume that the Supreme Court meant a different definition for those terms of art or for the word first or second in Castro than it has meant in its many years of habeas jurisprudence. The court has no further questions. Not that it matters, but Miranda is not a Fourth Amendment prophylactic rule. It's Fifth and to some extent Sixth Amendment. Well, there you go, Your Honor. And they constitutionalize it when Congress says, fine, we limit the exclusionary rule to constitutional violations. And oh, we forgot to tell you it's constitutional, which emphasizes the point that they do supervise us. And the supervisory rules are as applicable on us as anything else they tell us to do. Thank you, Your Honor, for answering the question for me. All right. Thank you. Have a good day. We'll take these cases under submission and stand in recess till tomorrow morning. Thank you.